# Richmond

## THE CHESAPEAKE AND OHIO RAILWAY COMPANY v. MAMIE WILY FOLKES.

January 19, 1942.

Record No. 2427.

Present, All the Justices.

The opinion states the case.

*Leake & Spicer*, for the plaintiff in error.

*George B. White* and *Minetree Folkes, Jr.*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mamie Wily Folkes, plaintiff in the lower court, obtained a verdict for $3,000 damages for personal injuries against the defendant, the Chesapeake & Ohio Railway Company, which moved the lower court to set aside the verdict and either enter judgment for the defendant or award a new trial.

The action of the trial court in overruling defendant's motions and thus permitting the verdict to stand is before us for review.

The collision which gave rise to the institution of this action occurred between a group of box cars, which were being moved by the servants of the defendant, and the automobile in which Mamie Wily Folkes was riding on the night of November 15, 1938. The scene of the accident was in Warwick county, just north of the corporate limits of the city of Newport News where Jefferson avenue (State highway No. 168) crosses two parallel spur railroad tracks maintained by the defendant. Ninety feet north of these spur tracks Jefferson avenue intersects with the defendant's main line tracks.

The plaintiff had attended a church entertainment in Newport News and was returning to Hilton Village as a guest in an automobile being driven by Reverend W. N. Entwisle. As Mr. Entwisle approached the crossing, driving in a northerly direction, he and the plaintiff both observed a box car standing on the main line tracks in front of them with one end extending slightly into the highway over which they were traversing. He approached cautiously and stopped, because he said that the position of this box car ahead indicated some activity on the main line. It happened that he stopped with his front wheels on the first spur track. Suddenly his attention was attracted by a brakeman who appeared from off the east side of the highway and who waved his lantern and "halloaed" at him to get back. Mr. Entwisle then saw a line of unlighted box cars, estimated at some eight to twenty-four feet from him, moving towards his car on the spur track at a speed of approximately five or ten miles per hour. He hastily attempted to back his car off the track, but before he could move it, the box car hit his automobile, turned it around and dragged it a short distance. Mr. Entwisle was not injured. However, the plaintiff attempted to leap out of the automobile just before the collision and was struck by the box car, receiving a low back strain or sprain as a result thereof.

■ The evidence is undisputed that the yard engine which was pushing the line of box cars failed to blow its whistle or ring its bell. It is also undisputed that the box car which rolled out of the darkness and injured the plaintiff had no lights on it. The only material factual question in dispute was whether the defendant's brakeman was at the crossing flagging traffic, as he contended, or whether he appeared tardily from the side of the road, too late to give Mr. Entwisle a warning signal. The jury's verdict, approved by the trial court, has settled this dispute, and therefore we are constrained to consider only that evidence which is favorable to the plaintiff. *City of Norfolk v. Hall*, 175 Va. 545, 9 S. E. (2d) 356.

The case was actually tried and submitted to the jury upon the defendant's common law duty to use reasonable care in the backing of its cars across a public highway. The defendant escaped the burden and requirements of Virginia Code, section 3958, because the engine which was pushing this line of cars never came within the prescribed area of not less than 300 nor more than 600 yards of the highway.

■ The defendant contends that no negligence has been established against it. However, it is well settled that aside from statutory requirements a railroad is under a common-law duty to warn motorists of the approach of a train at a crossing. *Davis v. McCall*, 133 Va. 487, 113 S. E. 835. A railroad is likewise under a similar duty to warn motorists of the proximity of a backing train. *Southern R. Co. v. Campbell*, 172 Va. 311, 1 S. E. (2d) 255. The evidence adduced by the plaintiff here to the effect that the backing train had no lights, gave no signal, and that the brakeman flagged the automobile after it had stopped on the tracks and after it was too late for Mr. Entwisle to get out of the path of the approaching box cars, is sufficient to spell negligence on the part of the defendant.

■ ■ The defendant alleges that the evidence discloses the negligence of Mr. Entwisle, the driver of the automobile in which plaintiff was riding, was the sole proximate cause

of the collision.  The simple concurring negligence, if any, of Mr. Entwisle and the servants of the railway company, cannot bar the plaintiff's recovery, since the negligence of a driver generally will not be imputed to a mere passenger. *Fruit Growers Express Co.* v. *Hulfish*, 173 Va. 27, 3 S. E. (2d) 160.  Defendant, however, urges that Mr. Entwisle was guilty of negligence which, as a matter of law, should be considered the sole proximate cause of plaintiff's injuries.  A consideration of the many attendant facts surrounding this particular collision, however, constrains us to deny this proposition.  The night was dark, and Mr. Entwisle approached the crossing cautiously, using his faculties effectually.  The box car which collided with his automobile carried no lights, nor was he timely flagged by defendant's brakeman.  Added to this is the fact that defendant's servants had left a car on the main track in such position as to arouse the suspicion of Mr. Entwisle and to cause him to focus his attention primarily on it.  Consequently, we are convinced that the question of proximate cause in the instant case was one entirely within the province of the jury, as is ordinarily the rule.  See *Spence* v. *American Oil Co.*, 171 Va. 62, 73, 197 S. E. 468, 118 A. L. R. 1120.

The defendant also contends that the plaintiff herself was guilty of contributory negligence which is a bar to her recovery.  This question, likewise, was a proper one, under the circumstances, to be decided by the jury, and its verdict for her which exonerates her from such negligence seems eminently fair.  She had been over this particular road only three times before the accident, and each time had been at night.  The automobile in which she was a guest was being operated slowly and carefully.  Furthermore, the evidence shows her to have been keeping an alert lookout, for it was she who first pointed out the presence of the box car on the main track ahead.

The railway company, by counsel, attacks the amount of damages awarded plaintiff by the jury's verdict as being excessive, and also assigns as error the giving of the

usual damage instruction which explained to the jury that in arriving at the amount of damages they should consider, among other things, the permanent or temporary character of the plaintiff's injuries. Defendant contends that there was no evidence of a permanent injury to plaintiff, and that consequently the jury should not have been so instructed.

The evidence showed that at the time of the trial of this case approximately seventeen months had elapsed since the plaintiff had been injured. She was still under medical care and was still suffering from an injury to her back which was designated as a low back sprain. It is also called by some orthopedic surgeons a strain of the sacro-iliac joints. She was still wearing a special corset which braced her back. There was considerable evidence disclosing that plaintiff had endured almost continual suffering from the time of the accident. She was confined some weeks to her bed, lost twenty pounds in weight, and has incurred an expense incident to her treatment of some $400. Her physician testified that she might get over her injuries or that she might have trouble all the rest of her life. Plaintiff asked for a verdict of $15,000; the jury awarded her $3,000. We think that the instruction given was justified by this evidence, and that the award was far from being excessive.

The final contention of the defendant is that the argument of counsel for plaintiff was prejudicial and such as to warrant the court in setting aside the verdict and awarding a new trial. During the argument of this case counsel for plaintiff in referring to the testimony of defendant's brakeman made the following remarks:

"That man that did that flagging, I believe he has been with the railroad company, to be safe, anywhere from 20 to 25 years and if he hadn't told somebody he went out there and flagged this traffic he would have lost his job. That is how much interest he had in it. I am sure he would be fired. He ought to have been fired anyway."

At this point, counsel for defendant merely entered an objection; the trial court sustained the objection and

pointed out that counsel for plaintiff could not draw a conclusion of what might happen. Counsel for defendant asked for nothing more, seemingly being satisfied with the court's ruling sustaining their objection. After verdict, however, counsel contended that the defendant was entitled to have the verdict set aside and a new trial awarded because of the above prejudicial and improper remarks. After maturely considering this motion the trial judge overruled it. We quote with approval from a portion of his opinion supporting his ruling.

"Unquestionably the remark should not have been made and the conclusions drawn * * * were not justified and should not have been voiced. It would have been decidedly best for the Court to have stricken out such remark and not merely sustained the objection of counsel for the defendant although the objection was all that defendant's counsel made to such remark. The Court did do what it was asked and counsel for the defendant were apparently satisfied with the action of the Court. Certainly they made no further motion nor did they take exception to the court's ruling, nor did they at any time, until after adverse verdict, claim that the remarks were inflammatory or that the same were of such importance as to justify a mistrial. They did not even ask that the same be formally stricken out by the Court.

"The approved and proper practice is as stated in Burk's Pleading and Practice, Third Edition, pages 504-505, as follows: 'If improper remarks are made by counsel in his address to the jury, and the opposing party wishes to object to them, the objection should be made at the time, and the Court requested to discharge the jury and declare a mistrial or to instruct the jury to disregard them and an exception notes (noted) to the Court's action if adverse, otherwise the objection will be deemed to be waived. Such objections come too late after verdict.'

" * * * And it is no doubt true that remarks made during argument can be such that a new trial would be justified and would be awarded where counsel had done nothing more than object to such remarks and had failed to except to the

court's ruling or ask that the same be stricken out or to then and there ask for a mistrial. But upon the whole record in this case the Court is convinced that the conclusion reached by the jury was well warranted and that the defendant received a fair trial, which it is entitled to, but which is all that it is entitled to. While the Court disapproves of the language used by counsel for the defendant, yet when the incident is considered as it happened and as counsel for the defendant treated the same, as disclosed by the transcript of the record, the Court does not deem it, standing alone, such as to justify a new trial in this case."

The judgment is affirmed.

*Affirmed.*