## Richmond

## PHILIP B. REID V. MARGARET HICKS BAUMGARDNER.

March 4, 1977.

Record No. 760368.

Present, All the Justices.

*Jerry K. Jebo (John C. Sheldon; Dalton & Jebo*, on briefs), for plaintiff in error.

*James L. Gleaves, Jr.; Kenneth I. Devore (Gleaves, Boyd & Kaase; Devore & Grubbs*, on brief), for defendant in error.

CochRAN, J., delivered the opinion of the court.

Margaret Hicks Baumgardner, as plaintiff, filed a motion for judgment in the trial court against Philip B. Reid, defendant, for personal injuries sustained in an automobile accident which occurred in the Town of Christiansburg on June 28, 1973. Reid admitted liability and, pursuant to the provisions of Code § 8-237 (Repl. Vol. 1957), paid into court the sum of $2,715.50. A jury trial limited to the question of damages resulted in a verdict for the plaintiff in the amount of $25,000, in addition to the sum deposited. The trial court, overruling the defendant's motion to set aside the verdict, on March 16, 1976, entered final judgment thereon for $27,715.50. On appeal Reid contends that improper argument to the jury by counsel for Mrs. Baumgardner requires reversal of the judgment and remand of the case for a new trial.

There is no conflict in the evidence. The automobile operated by Mrs. Baumgardner was stopped in traffic when it was struck in the rear by Reid's vehicle and propelled forward into a car stopped in front of hers. Mrs. Baumgardner received what is commonly known as a whiplash injury to her neck and shoulders. She was treated first in the emergency room of the local hospital and later by her family physician. She wore a cervical collar for six or eight weeks and subsequently used a cervical traction apparatus prescribed by an orthopedic specialist to whom she had been referred. Although Mrs. Baumgardner, a high school teacher, lost no income because of the accident, she testified that she continued to suffer pain and stiffness. The medical evidence was that Mrs. Baumgardner would have some permanent residual stiffness. Her total medical expenses attributable to the accident were $215.50, plus an additional bill for $25 discovered during the trial. There were no other special damages.

In his opening statement counsel for Reid, without objection, informed the jury that Reid's liability was conceded and that he felt that the payment into court of the medical expenses of $215.50, plus $2,500 for pain and suffering, was "a reasonable offer" for Mrs. Baumgardner's damages.

Mrs. Baumgardner's life expectancy of 28.7 years was set forth in an instruction given to the jury. There is no controversy over this or any other instruction.

In closing argument Reid's counsel again referred to the medical expenses, which he requested the jury to increase to $240.50 because of the additional $25 medical bill. He continued as follows:

> "That's not very much. Now that's not the only indication of what her injury is worth. But that definitely is one indication. We have paid into court in addition to those medical bills a total of twenty-five hundred dollars ($2500.00) — ten times what her medical bills are.
>
> Now in assessing this case, we've, of course had the deposition of Dr. Bray to read over. We've had other evidence we've ascertained. And that's what we felt was a fairly reasonable sum — twenty-five hundred additional dollars."

In final argument for the plaintiff, her counsel made this statement:

> "Now Dr. Bray is as qualified as any orthopedic surgeon in the South, I suppose. You heard his qualifications. You've heard what he said — eighteen (18) months after the accident that in all probability this is a permanent injury — not one she lives with today; not one she feels better about next week, but one she'll have for twenty-eight point seven (28.7) years according to the annuity table. Now take it a thousand dollars ($1000.00) a year and it's cheap, I'm telling you!"

Reid's counsel interposed, "I object, Your Honor", to which the trial court replied, "Overruled". Closing argument for the plaintiff continued to its conclusion without further interruption.

After the jury retired to consider its verdict Reid's counsel made the following statement:

> "Your Honor, we highly object to the terms used by the Plaintiff's attorney when he said 'one thousand dollars a year'. This is (sic) traditionally been felt to be highly prejudicial and grounds for a mistrial. And we feel that it's improper in the situation and the jury should be instructed that they should disregard this argument."

The trial court replied, "I'll overrule your motion".

After the jury returned a verdict for the plaintiff for $25,000 in addition to the $2,715.50 paid into court, Reid's counsel made this motion:

"We move that that be struck on the grounds that the argument by the Plaintiff's attorney was highly improper by saying a thousand dollars ($1000.00) a year. You will note that in the instructions, they said the life expectancy was twenty-eight (28) years approximately and we say that the argument had an effect on the Jury; that it was a highly prejudicial effect; it's a highly improper argument saying so much per year or anything like that. We move that the Court strike the verdict and grant a new trial."

The trial court responded, "I've already ruled on that and I'll repeat the ruling. I overrule the motion".

█ There can be little doubt as to the impropriety of the argument of plaintiff's counsel. In *Appliance Company* v. *Harrington*, 201 Va. 109, 114-15, 109 S.E.2d 126, 130-31 (1959), we held that it was impermissible for counsel to argue to the jury an amount for pain, suffering, mental anguish, and disability calculated on a daily or other fixed basis. Verdicts must be based upon the evidence in the case rather than the speculative calculations of counsel. The contention of Mrs. Baumgardner that the statement in question was merely a suggestion for purposes of illustration is without merit. The statement was necessarily suggestive, and was intended to be so, as the purpose of any argument to a jury is to influence the jury in favor of the advocate's position. But, as there was no evidence to support the figure of $1,000 per year, the fixed-formula argument was manifestly improper. The question remains whether Reid preserved his right to complain.

█ Relying on *MacGregor* v. *Bradshaw*, 193 Va. 787, 71 S.E.2d 361 (1952), Mrs. Baumgardner maintains that the argument of her counsel was provoked and invited by argument of Reid's counsel, so that Reid may not be heard to complain. We reject this contention. Reid's counsel did state that the sum of $2,715.50 had been paid into court and argued that this was a reasonable figure for damages. However, the trial court instructed the jury in Instruction E that Reid had paid that amount into court, that if the jury believed that this was reasonable compensation for the plaintiff, it should find a verdict for the defendant, and if the jury did not believe that the sum deposited was a reasonable figure it should find for the plaintiff in an additional amount. Furthermore, the amount of

the medical expenses was in evidence. Reid's counsel had the right to argue from the instructions and from the evidence, and in doing so, he did not invite the improper argument of opposing counsel.

Mrs. Baumgardner next argues that Reid's counsel failed to state with reasonable certainty the ground for his objection to the argument in controversy, and that under the provisions of Rule 5:7 (now Rule 5:21), in effect at the time of trial, we should not now notice the objection. The purpose of the requirement of specificity is to give the trial court an opportunity to rule intelligently and avoid unnecessary appeals, reversals, and mistrials. *Woodson* v. *Commonwealth,* 211 Va. 285, 288, 176 S.E.2d 818, 820 (1970). However, in the present case the trial court, while peremptorily overruling the objection, could hardly have failed to comprehend the reason why it was interposed in interruption of argument. This is borne out by the prompt action subsequently taken by the court in overruling the motion for a cautionary instruction to the jury and the motion to "strike" the verdict, when the ground of objection was clearly stated in each instance. The rulings of the court indicate an awareness at all times of the ground of defendant's objection to the argument.

Finally, Mrs. Baumgardner insists that Reid's counsel acted too late. We acknowledge that the approved procedure for counsel to follow is to object to improper argument at the time, giving reasons for the objection, and to move for a mistrial or for a cautionary instruction to the jury to disregard the improper remarks. *C. & O. Ry.* v. *Folkes,* 179 Va. 60, 68, 18 S.E.2d 309, 312 (1942). In that case, objection to improper argument was made and sustained, and we affirmed the trial court's ruling that no further action had been requested of the court by the objecting attorney. In *Hargrow* v. *Watson,* 200 Va. 30, 34-35, 104 S.E.2d 37, 40 (1958), where objection was made to argument, but no motion for a mistrial or for a cautionary admonition was made, we held, without deciding whether the argument was improper, that the objection was waived.

Except under unusual circumstances, objection to improper argument must be timely so that the trial court may rule effectively, and if not made until after the case has been submitted to the jury, it is too late. *Burks* v. *Webb, Administratrix,* 199 Va. 296, 311, 99 S.E.2d 629, 641 (1957). In

*Russo* v. *Commonwealth,* 207 Va. 251, 256-57, 148 S.E.2d 820, 824-25 (1966), we held that objection to argument and a motion for a mistrial were not timely when made only after the argument was concluded. We said there that failure to make timely objection ordinarily constitutes a waiver; that objection should have been made when the objectionable words were spoken; and that the trial court should have been requested to instruct the jury to disregard the improper argument. *See also Cooke* v. *Griggs,* 183 Va. 851, 858, 33 S.E.2d 764, 766-67 (1945).

The decision of the trial court as to the method by which to remove the prejudicial effect of improper argument is within its sound discretion, and an admonition to the jury to disregard such argument is generally deemed to have been sufficient and not to have been an abuse of the trial court's discretion. *See Cape Chas. Flying Ser.* v. *Nottingham,* 187 Va. 444, 456, 47 S.E.2d 540, 545-46 (1948). However, if the trial court refuses to take any corrective action to eliminate the adverse effect on the jury of improper argument, the probability of prejudice is increased by the apparent approval given by the court to the argument. *McLean* v. *Commonwealth,* 186 Va. 398, 402, 43 S.E.2d 45, 47 (1947); *Green* v. *Commonwealth,* 122 Va. 862, 868-69, 94 S.E. 940, 941-42 (1918).

Here, objection was timely made but overruled. Counsel should have insisted upon stating at that time the ground for his objection. Although he failed to do so, he subsequently renewed the objection, specified the reason for it, and requested the trial court to direct the jury to disregard the improper argument. These acts, while coming late in the proceedings, came soon enough to permit corrective action to be taken by the court. If the court had failed to understand the basis for the original objection, the explication cleared up any misunderstanding and afforded an opportunity for reconsideration and reversal of its earlier ruling. There was still time for the court to caution the jury to disregard the objectionable remarks. This was not done, and the jury returned a verdict in an amount only slightly less than the figure suggested by Mrs. Baumgardner's counsel of $1,000 a year for the 28.7 years of her life expectancy. The probability that the jury was influenced by the improper argument and the trial court's apparent approval thereof is manifest.

Accordingly, we will reverse the judgment and remand the case for a new trial consistent with the views herein expressed and limited to the question of damages.

*Reversed and remanded.*

I'ANSON, C.J., dissenting.

I do not agree with the holding of the majority that the argument to the jury by the plaintiff's counsel requires reversal of the judgment and remand of the case for a new trial.

Here, defendant's counsel told the jury in his opening statement that payment by the defendant into court of the amount equal to plaintiff's medical expenses, plus $2,500 for her pain and suffering, was a reasonable offer for her damages. In his closing argument to the jury, defendant's counsel again stated "we felt [twenty-five hundred additional dollars] was a fairly reasonable sum."

It was in response to the above statements by defendant's counsel that plaintiff's counsel told the jury what, in his opinion, would be a fair award to the plaintiff.

Even if the argument of plaintiff's counsel was error, which I do not concede under the circumstances here, it was invited by defendant's counsel, and it did not constitute grounds for reversal and a new trial. *See MacGregor* v. *Bradshaw*, 193 Va. 787, 795, 71 S.E.2d 361, 365-6 (1952); *Brann* v. *F. W. Woolworth Co.*, 181 Va. 213, 221-22, 24 S.E.2d 424, 427 (1943).

The majority opinion concludes that the argument of counsel influenced the jury in arriving at the amount of its verdict. The effect of this is to say that the argument was so prejudicial that the amount of the damages fixed by the jury was excessive. But defendant did not assign as error that the verdict was excessive. Indeed, it was conceded in oral argument before us by counsel for the defendant that he could not say the verdict was excessive as a matter of law. Hence, I cannot conclude that the argument was prejudicial to the defendant. *See Phillips* v. *Fulghum*, 203 Va. 543, 549, 125 S.E.2d 835, 840 (1962).

For the reasons stated, I would affirm the judgment.

COMPTON, J., joins in this dissent.